IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL T.,[1]                                          Case No. 3:24-cv-00230-JR

      Plaintiff,                                    OPINION AND ORDER

      v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

            Defendant.
_____

RUSSO, Magistrate Judge:

      Plaintiff Michael T. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for Title II Disability

Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate

Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28

U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this

case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

Born in September 1972, plaintiff alleges disability as of October 11, 2018,[2] due to "PTSD, Bergers kidney disease, arthritis of the spine, [and] degenerative disk disease of the spine." Tr. 70, 242. His application was denied initially and on reconsideration. On December 1, 2020, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 65-97. On December 25, 2020, the ALJ issued a decision finding plaintiff not disabled. Tr. 33-44.

Plaintiff timely filed an appeal, and, on January 23, 2023, Magistrate Judge Armistead reversed the ALJ's decision and remanded the case for further proceedings. Tr. 749-57. In particular, Judge Armistead determined remand was necessary so that the ALJ could consider new and material evidence submitted to the Appeals Council – namely, the medical opinions of Kenneth Paltrow, M.D., Ph.D., and Victoria McDuffee, Ph.D. – which "directly undermine[d] the ALJ's evaluation of the medical evidence and plaintiff's subjective symptom testimony about his mental health limitations." Tr. 752-54.

On October 19, 2023, the ALJ held a second hearing. Tr. 717-24. On December 7, 2023, the ALJ issued another unfavorable decision. Tr. 691-716.

## THE ALJ'S FINDINGS

At step one of the five step sequential process, the ALJ found plaintiff had not engaged in substantial gainful activity "from his alleged onset date of October 11, 2018, through his date last insured of December 31, 2019." Tr. 698. At step two, the ALJ determined the following

---

[2] Plaintiff initially alleged disability as of April 4, 2013. Tr. 70, 210. However, he previously applied for and was denied disability benefits on December 6, 2016. Tr. 117. Accordingly, plaintiff amended his alleged onset date to October 11, 2018, to correspond with the relevant medical opinion evidence post-dating the prior Administrative Law Judge decision. Tr. 70-71.

impairments were medically determinable and severe: "lumbar degenerative disc disease with left lower extremity sciatica, chronic lumbar strain, chronic kidney disease, obesity, major depressive disorder, and [PTSD]." *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) except:

> [He] can frequently climb ramps, stairs, ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, and crawl; has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek; should have no interactions with the general public and only occasional interactions with co-workers with no work requiring teamwork; and is able to adapt to routine changes in the work setting.

Tr. 700.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 709. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy that plaintiff could perform despite his impairments, such as routing clerk, merchandise marker, and inspector hand packager. Tr. 710.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting his subjective symptom statements; and (2) improperly assessing the medical opinions of Dr. McDuffee, Dr. Paltrow, Maryann Price, Ph.D., and nurse practitioner Patricia Ofoegbu.[3]

---

[3] Plaintiff also contends the ALJ impermissibly "failed to discuss the social limitations discussed in" the February 2016 medical opinion of Scott Kaper, Ph.D., such that he "arguably should have been found disabled at that point." Pl.'s Opening Br. 16, 35 (doc. 10); Tr. 300-05. However, there is no indication that plaintiff has sought to re-open the prior ALJ proceedings or re-amend his

## I.    Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting his testimony concerning the extent of his mental impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is

---

alleged onset date. Given these circumstances, the Court declines to address evidence that pre-dates the adjudication period by more than two years as part of these proceedings. *Cf. Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("[m]edical opinions that predate the alleged onset of disability are of limited relevance"); *see also Crystal F. v. Acting Comm'r of Soc. Sec.*, 2025 WL 429627, *4 (W.D. Wash. Feb. 7, 2025) ("ALJ properly rejected [medical] opinions, all of which were at least eighteen months before the relevant period, because they assessed the claimant's function well before the filing date") (citation and internal quotations omitted).

"supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the 2020 hearing,[4] plaintiff testified that he was unable to work due to "[a]nger [and] concentration issues," a "lot of depression," and difficulty "leaving the house." Tr. 75. Plaintiff explained that he got "super frustrated" with other employees and supervisors at his last job, causing him to "lash out" and quit. Tr. 83-84. He reported taking prescription medications for his night terrors and PTSD, as well using as marijuana for his anxiety. Tr. Tr. 75-77. Although plaintiff indicated his prescription medications were effective, he endorsed ongoing symptoms including paranoia, isolation, nightmares, and bad "visions." Tr. 76, 85. He also reported side-effects including low blood pressure, "fogginess," fatigue, and sedation. Tr. 76.

In terms of daily activities, plaintiff testified that he drives "maybe once" per week and never rides public transportation. Tr. 73. In terms of chores, he occasionally vacuums, takes out the trash, cooks breakfast, does laundry, and treats the lawn "to keep grub down." Tr. 77-78. Even so, plaintiff reported problems with completing tasks due to concentration and low energy levels. Tr. 85-86. Plaintiff reported visiting with relatives and going fishing approximately twice per year, but otherwise not participating in any activities or hobbies outside the home. Tr. 78-80. Within the home, plaintiff stated he will use the treadmill three times per week and play Pokémon Go on his phone daily, but the rest of the time he is either in bed or watching movies in his "mancave," where he feels "more comfortable" because he can be "alone even though [he is] in a house full of people." Tr. 80-82, 85. When asked what his responsibilities were in relation to the three young

---

[4] Plaintiff elected not to proffer new testimony at the 2023 hearing. Tr. 719-24.

relatives living with him, plaintiff responded that he makes "sure they're okay [and] have food," and are doing their online schooling. Tr. 82.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 701. The ALJ specifically cited to plaintiff's activities of daily living, the objective medical evidence, and "admissions of improvement in symptoms with treatment." Tr. 702.

Notably, the ALJ cited to evidence demonstrating that plaintiff "did weed eating," "drives twice a month," "played an augmented reality game that requires traveling outside the home while using a smartphone," and "assumed care for three children from his extended family," whom he "minded [and had] interactions with." Tr. 704-05. An ALJ may discredit a claimant's testimony when they report activities of daily living that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds). Here, however, substantial evidence does not support the ALJ's decision in this regard.

Initially, the Court notes the majority of evidence cited by the ALJ is congruous with plaintiff's hearing testimony. *See Annette P. v. Comm'r of Soc. Sec. Admin.*, 578 F.Supp.3d 1179, 1183 n.4 (D. Or. 2022) ("activities that are entirely consistent with plaintiff's hearing testimony do not support a negative credibility finding") (citation and internal quotations omitted). Plaintiff largely indicated an inability to function socially and outside of the home due to psychological symptoms. *See, e.g.*, Tr. 75, 266, 269, 968. Therefore, the fact that he drove periodically, spent

time on his phone (not interacting with others), or engaged in certain isolated activities within his home does not bely his hearing testimony.

The remainder of the evidence was mischaracterized by the ALJ – namely, that plaintiff cared for three young children – and accordingly also fails to constitute substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" that was "not entirely accurate regarding the content and tone of the record" did not support an adverse credibility finding). Significantly, plaintiff's three relatives were 9, 11, and 17 as of the beginning of the adjudication period. Tr. 395, 621-22, 483-84. And, other than reflecting that they lived with plaintiff and his wife, the record is silent concerning the extent of plaintiff's childcare responsibilities. *Cf. Treviso v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (absent specific details about claimant's childcare responsibilities, "those tasks cannot constitute substantial evidence") (citation and internal quotations omitted). Thus, activities such as plaintiff's – i.e., occasional child-related tasks and chores within the home, playing Pokémon Go, engaging in twice-yearly relative visits and fishing excursions, and spending time in bed or his "mancave" – are neither transferable to a work setting nor contradict claims of a totally debilitating impairment. *See Morgan v. Colvin*, 2013 WL 6074119, *5-6 (D. Or. Nov. 13, 2013) (reversing the ALJ's credibility finding under analogous circumstances).

The ALJ also noted that plaintiff's "mental health treatment consisted solely of medication management through the date last insured, with no psychiatric inpatient admissions and no counseling." Tr. 702. Relatedly, the ALJ concluded plaintiff's nightmares were adequately controlled with medication and, "although he has endorsed panic attacks two to four times per week lasting about 30 minutes, he has not required any treatment for acute mental health symptoms and instead admitted that using cannabis helped him relax." Tr. 705.

However, "[c]ourts in the Ninth Circuit have long established that medication treatment regimens with psychiatric medications . . . are not conservative." *Velasquez v. O'Malley*, 2024 WL 3220726, *13 (S.D. Cal. June 27), *adopted by* 2024 WL 4327024 (S.D. Cal. Sept. 27, 2024) (collecting cases). "Nor must a claimant undergo psychiatric hospitalization to be considered disabled." *Id.* (citations omitted). In this case, it is undisputed plaintiff has been prescribed Prazosin and Sertraline for his PTSD, depression, and night terrors. *See, e.g.*, Tr. 244, 380, 395-96, 413, 465, 484. And while plaintiff has reported at various points that his Prazosin worked "well," the record is also replete with evidence reflecting that he continued to experience sleep disruption due to his mental health symptoms. Tr. 11, 16,18, 25-27, 267, 485, 584, 646-48, 662, 966-67, 1124, 1142, 1158.

Concerning counseling, the record reflects that plaintiff tried attending weekly sessions for several months but did "not [find them] helpful." Tr. 13, 380-81, 484. Other evidence suggests that plaintiff was resistant to therapy for his mental health issues. Tr. 302, 1048, 1059. Given the record before the Court, the ALJ's reliance in this reasoning was improper. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ( "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (citation and internal quotations omitted).

Finally, the ALJ found that plaintiff's "allegations and reported symptoms [were] not consistent with the clinical signs observed by practitioners who have examined [him]." Tr. 702. In support of this conclusion, the ALJ relied on the reports of Drs. McDuffee, Paltrow, and Price, and Ms. Ofoegbu. Tr. 702-05. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported

by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, "the ALJ cannot rely exclusively on the lack of corroborating medical evidence" to discount a claimant's testimony where, as here, the ALJ's other reasons are invalid or not supported by substantial evidence. *Brown v. Colvin*, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014).

In any event, the ALJ once again mischaracterized the record in recounting the objective medical evidence. Indeed, as discussed in greater detail below, while there are certain minor differences amongst these medical reports, they overwhelmingly reflect that plaintiff suffers from significant mental health symptoms, consistent with his hearing testimony. *Cf.* Tr. 752-54 (Judge Armistead concluding that the medical opinions of Drs. McDuffee and Paltrow "directly undermine[d] the ALJ's evaluation of . . . plaintiff's subjective symptom testimony about his mental health limitations"). The ALJ erred in assessing plaintiff's subjective symptom statements.

## II.    Medical Opinion Evidence

Plaintiff asserts the ALJ improperly discredited the opinions of Dr. Price, Dr. Paltrow, Dr. McDuffee, and Ms. Ofoegbu. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are." *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a

minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

### A.    Dr. McDuffee

On October 11, 2018 – i.e., the alleged onset date – Dr. McDuffee interviewed plaintiff, and completed Disability Benefits Questionnaires on behalf of the Department of Veterans Affairs ("VA"). Tr. 975-81. In the "Recent History" section, Dr. McDuffee denoted that plaintiff's youngest adult son lives with his mother and he "just started building a relationship with him." Tr. 977. Plaintiff reported marrying his wife in 2015, with whom he has a "good" relationship. *Id.* In terms of social activities, plaintiff "hangs out with friends and [they] talk about every few months." *Id.*

In the "Relevant Occupational and Educational History" and "Relevant Mental Health History" sections, plaintiff recounted that his mental health symptoms started while he was deployed after witnessing one of his friends die. *Id.* Once he returned to civilian life, he found working and being around other people "too stressful," and he started experiencing anger on the job. *Id.* He started mental health treatment in 2014 after his "family [said he] need[ed] to go." Tr. 978. Plaintiff reported his medications were beneficial and described his current mental health experience as follows: "I have a quick fuse. I want to be left alone and go somewhere and sit alone. I yell . . . I sleep in increments of about an hour and a half. I can't remember the dreams but I jump and wake up. I am terrified . . . This occurs about three times a month . . . I start thinking about certain things that have happened [and have panic attacks]." *Id.*

Based on her clinical interview and behavior observations, Dr. McDuffee diagnosed plaintiff with PTSD, noting "depression, anxiety, and insomnia are components of the PTSD." Tr. 975, 980-81. Dr. McDuffee listed plaintiff's symptoms as: depressed mood, anxiety, chronic sleep

impairment, disturbances of motivation and mood, difficulty in establishing and maintaining

effective work and social relationships, difficulty adapting to stressful situations (including work

or a work like setting), and suicidal ideation. Tr. 980. Based on these symptoms, she opined

plaintiff suffers from "occupational and social impairment with reduced reliability and

productivity." Tr. 976. In the narrated portion of her report, Dr. McDuffee wrote:

> [Plaintiff] has marked impairment in his interpersonal functioning with the public,
> coworkers, and supervisors. He has marked impairment in adapting to changes in
> the workplace. Marked impairment in responding appropriately to critical feedback
> from supervisors. He is markedly impaired to sustaining concentration and
> attention for extended periods of time. He has marked impairment in his reliability
> and productivity. [He] does not appear to pose any threat of danger or injury to self
> or others.

Tr. 981.

The ALJ found Dr. McDuffee's opinion "not persuasive":

> Although [plaintiff] reported a history of finding being around people at work
> stressful and reported it would sometimes not take much for him to become angry,
> the limitations in interaction identified are not supported by the doctor's
> observations that [plaintiff] was starting to build a relationship with his son, had a
> good relationship with his wife, and has friends that he hangs out with and talks
> with every few months. The doctor's examination also does not support the stated
> degree of limitation. Rather, [plaintiff] had an avoidant behavioral style, but his
> hygiene and grooming were good, and [he] was otherwise pleasant and cooperative.
> While [plaintiff] endorsed a history of walking off of jobs; a history of being sent
> to mental health while deployed because he stopped caring and stopped running for
> cover during alarms after witnessing and experiencing traumatic events; and a
> history of using alcohol to manage symptoms, the limitations reported for adapting,
> concentration, reliability, and productivity are not supported. Rather, the doctor
> noted [plaintiff] avoided dealing with mental health issues by working, indicating
> he was able to work despite mental health issues. The doctor also acknowledged
> that he stopped using alcohol in 2015, and admitted medications were beneficial
> and he rarely had nightmares with prazosin. [Plaintiff] also endorsed panic attacks
> two to four times per week lasting about 30 minutes, but he admitted that cannabis
> helped him relax. The doctor's opinions are also not consistent with the evidence
> prior to the date last insured, which shows no mental health treatment, good control
> of nightmares on medication, and strongly suggests the symptoms are not as severe
> as alleged. [Plaintiff's] reported abilities at the time, including taking care of three
> children of family members on an ongoing basis, making sure the kids did their
> online schoolwork, and playing Pokémon Go, show [he] is able to interact with

family members, adapt enough to get out of the house for recreational purposes, follow instructions and maintain attention well enough to play an electronic augmented reality game, and remind others to meet their responsibilities. These factors do not support marked limitations identified by this source but instead show [plaintiff] competently carried out a variety of functions utilized in work activity.

Tr. 705-06.

An independent review of the record reveals that the ALJ's consideration of the supportability and consistency of Dr. McDuffee's opinion, along with the additional sub-factors, is not supported by substantial evidence. As discussed in Section I, neither plaintiff's limited daily activities nor his reports surrounding the efficacy of his medications (including marijuana) contravene Dr. McDuffee's opinion that he would experience marked social, concentration, and persistence limitations in a work setting. The same is true in relation to the fact that plaintiff had a positive relationship with his wife and other family members or talked to or saw friends a few times a year (all of whom are familiar to him). Lastly, Dr. McDuffee's observations of plaintiff – e.g., that "his hygiene and grooming were good, and [he] was otherwise pleasant and cooperative" – were a part of and factored into her medical opinion, such that they in no way bely the assessed workplace limitations. *Cf. Morgan*, 2013 WL 6074119 at *7 (examiner's "rote observation" that the claimant appeared "healthy looking" did not "undermine her [underlying diagnosis] or the fact that she has consistently endorsed symptoms associated therewith").

In other words, the overall medical record reveals waxing and waning mental health symptoms with generally low levels of overall functioning, especially outside the home, consistent with Dr. McDuffee's report. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2013) (ALJ may not reply on isolated instances of favorable psychological symptoms when the record as a whole reflects longstanding psychological disability); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("statements must be read in context of the overall diagnostic picture . . . That a person

who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace"). As such, even assuming the ALJ's reasons were legally sufficient in relation to this medical opinion evidence, they were not supported by substantial evidence such that reversal is warranted. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

### B. Dr. Price

Dr. Price continued Dr. McDuffee's examination of plaintiff on behalf of the VA on November 7, 2018. Tr. 482. In the "Relevant Social/Marital/Family History" section, Dr. Price indicated that plaintiff lived with his wife and they had recently "assumed care for three children from the extended family." Tr. 483-44. In the "Relevant Occupational and Educational History" section, plaintiff communicated that he worked briefly after being honorably discharged from the Army, largely for a temp agency that he "voluntarily resigned [from] following anger management issues on the job." Tr. 484. This section went on to note: "He is not employed currently, is able to maintain IADLs, states he is at home most of the time." *Id.*

The "Behavioral Observations" section stated:

> [Plaintiff] presents as reticent, with depressed mood. Later in the evaluation, he acknowledges that he is self-conscious, reluctant to disclose PTSD symptoms. He reports intrusive thoughts, tendency to have negative thoughts, nightmares, and sensitivity to anniversary dates. He reports anxiety is "always there," noting that medication "keeps me off the ledge." He reports a degree of social isolation, tends to spend time alone in his room, distancing from family interactions. He reports that irritability, anger management issues interfered with his ability to work with co-workers in his previous employment. He reports that he is reluctant to leave home much of the time, continues to experience depressed mood, fatigue, anhedonia, poor concentration and focus. During this interview, there is moderate impairment in attention. (The veteran fails to complete serial 7's). No current [suicidal ideation].

Tr. 485-86.

Dr. Price diagnosed plaintiff with PTSD and depression, noting that plaintiff's symptoms included: depressed mood, anxiety, chronic sleep impairment, disturbances of motivation and mood, and difficulty in adapting to stressful circumstances, including work or a work like setting. Tr. 483, 485. She then checked a box denoting that plaintiff experienced "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." Tr. 483. Regarding plaintiff's "occupational functioning," Dr. Price wrote:

> When both medical and mental health conditions are considered, there would be ongoing moderate to severe impairment in productivity for this [plaintiff]. There is moderate impairment in attention and focus that would impact task completion and accuracy in performance. [Plaintiff] also reports irritability that has impacted his ability to work with co-workers on an ongoing basis. He reports a limited daily routine currently, although he is generally able to maintain IADLs.

Tr. 482.

The ALJ determined Dr. Price's opinion was "partially persuasive":

> The opinion is supported in part by the clinical interview by this source. [Plaintiff] endorsed a depressed mood, intrusive thoughts, nightmares, anxiety, isolation, and anger management issues, but the doctor observed only moderate impairment in attention and a failure to complete serial sevens, while [he] was otherwise alert and oriented and denied suicidal or homicidal ideation. Although [plaintiff] reported anger management issues, the opinion based on those statements is not consistent with the other evidence, including [plaintiff's] activities such as taking care of three children on an ongoing basis and leaving the home to play an augmented reality video game. It is also not consistent with the conservative nature of treatment through the date last insured, with no counseling and management of symptoms solely with medication.

Tr. 708.

As discussed in Section I, "the use of psychiatric medications is not evidence of conservative treatment in the context of a mental health disorder." *Choat v. Berryhill*, 2018 WL 2048332, *5 (D. Or. Apr. 30, 2018). As addressed in Section II(A), plaintiff's limited daily activities are not inconsistent with the occupational restrictions outlined by Dr. Price. Further, Dr.

Price's behavioral observations – i.e., that plaintiff appeared "reticent," depressed, and had a "moderate impairment in attention" – support her opinion. Tr. 485-86. That plaintiff was also observed to be appropriately oriented and not suicidal or homicidal is irrelevant, especially when the record is read as a whole. The ALJ erred in evaluating Dr. Price's opinion.

### C.     Dr. Paltrow

Dr. Paltrow interviewed plaintiff on December 22, 2019, completing another Disability Benefits Questionnaire for the VA. Tr. 983-91. His assessment largely echoed Dr. McDuffee's October 2018 report, insofar as plaintiff recounted similar symptoms and service and occupational histories. Tr. 986-87, 990. The "Behavioral Observations" section specified:

> [Plaintiff] was with facial hair, was well groomed and dressed for warmth: kept his long-sleeved hooded sweatshirt on, and kept the hood on over a baseball cap, as if the room where I examined him was very cold – which it was not. He was oriented as to place, person, present date, and purpose; he was courteous; he spoke ever so softly with lengthened periods of latency, with decreased durations of utterance; without evidence of delusions, hallucinations, or thought disorder; he carried out visual contact with me; his affect was appropriate – tearful at times.

Tr. 990.

Dr. Paltrow diagnosed plaintiff with PTSD and checked a box reflecting he experienced "total occupation and social impairment." Tr. 985, 991. The "Remarks" section went on to state:

> PTSD causes functional impairment in this [plaintiff]. The constellation of symptoms and negative behaviors preclude working in any setting. These findings are both from the medical record and my examination. They include: memories of traumatic events, distressing dreams related to the trauma, flashbacks, prolonged psychological and physiological distress, avoidance, persistent negative beliefs, diminished participation (to include agoraphobia), estrangement from others, inability to experience positive emotions, irritable behavior, hypervigilance, exaggerated startle response, problems with concentration, . . . chronic depression, chronic anxiety, chronic panic attacks, chronic sleep disturbance, impairment of memory, impaired abstract thinking, chronic suicidality, impaired impulse control, and sever inability to perform activities of daily living such as chores and small repairs in the household.

Tr. 991.

Page 15 – OPINION AND ORDER

In regard to Dr. Paltrow, the ALJ found that "the doctor's observations do not support the stated opinion":

> [Plaintiff's] affect was tearful at times but appropriate. He spoke softly with lengthened periods of latency and decreased durations of utterance, but was well-groomed, oriented, and courteous. The doctor reported a number of symptoms in support of the opinion . . . However, while some of the symptoms are consistent with the history reported by [plaintiff], and the opinion by Dr. McDuffee as referenced in Dr. Paltrow's report, none of these issues are apparent from this source's exam, and they are not consistent with the evidence from the alleged onset date through the date last insured. Rather, [plaintiff's] treatment consisted solely of medication management with no counseling, he recalled three of three items immediately and two after a delay; [plaintiff] was alert, cooperative, and conversant, or pleasant; he failed to complete serial sevens, but demonstrated only moderate attention deficits; he has no history of suicidal ideation; and he reported that Prazosin was controlling night terrors well . . . [Plaintiff's] admitted activities are also contrary to the doctor's reports that [he] cannot do chores or work activities. [Plaintiff's] hearing testimony indicated activities including] taking care of three children of family members on an ongoing basis, making sure the kids did their online schoolwork, and playing Pokémon Go. Such activities demonstrate an ability to carry out tasks consistent with the [RFC].

Tr. 706-07.

The ALJ therefore rejected Dr. Paltrow's opinion for the same reasons that he found the reports of Drs. McDuffee and Price to be unpersuasive. These reasons are equally invalid in relation to Dr. Paltrow's assessment, which, if anything, suggested a greater degree of impairment (and had the benefit of relying on an additional examination and additional medical evidence).

### D.    Ms. Ofoegbu

Ms. Ofoegbu performed a consultative exam of plaintiff on June 27, 2023, pursuant to which she reviewed plaintiff's medical records, conducted a clinical interview, an performed a mental status exam. Tr. 997-99. During the clinical interview, plaintiff reported having "anger issues, confusion, loss of motivation for things he used to do," and "a history of PTSD after deployment in the military around 2012," which caused "flashbacks [and] night terrors." Tr. 997. As for daily activities, plaintiff indicated he "wak[es] up around 6 AM, eats, bathes, dress[es],

microwaves, drives two times a month, dog walk[s]. Denied having any hobbies." *Id.* Ms. Ofoegbu

listed plaintiff's diagnoses as PTSD, anxiety, and depression. Tr. 998. The narrative portion of her

report specified:

> [Plaintiff] would not have difficulty performing simple and repetitive tasks [or]
> detailed and complex tasks. [He] would not have difficulty accepting instructions
> from supervisors. [Plaintiff] would have difficulty interacting with coworkers and
> the public. [He] is experiencing fear and anxiety, checks door often, believes people
> are out to get him. [He] would have difficulty performing work activities on a
> consistent basis without special or additional instruction. [Plaintiff] is observed to
> be socially withdrawn to self, experiences difficulty processing information.
> [Plaintiff] would have difficulty maintaining regular attendance and completing a
> normal workday/workweek without interruptions from a psychiatric condition.
> [He] endorses auditory hallucinations which interferes with his normal day-to-day
> activities. [He] would have difficulty dealing with the usual stress encountered in
> the workplace [as he] is experiencing low level of stress tolerance.

Tr. 999.

    In a corresponding "Medical Source Statement of Ability to do Work-Related Activities

(Mental)," Ms. Ofoegbu checked boxes evincing plaintiff would have no problems in regard to his

"ability to carry understand, remember, and carry out instructions," and "mild" problems in regard

to his "ability to interact appropriately with supervisor(s)." Tr. 994-95. She otherwise opined

plaintiff was moderately impaired in his ability to: interact appropriately with the public and co-

workers, and respond appropriately to usual work situations and changes in a routine work setting.

Tr. 995. In support of the aforementioned limitations, Ms. Ofoegbu wrote:

> [Plaintiff] experiences signs and symptoms of PTSD trauma-related issues from
> seeing his colleagues and friends' deaths in the military [and] endorsed having
> flashbacks, auditory hallucination from the dead friend's voice. Also, [he]
> experiences nightmares, paranoid delusion checks door frequently to ensure people
> are not there to get him . . . Per evaluation, [plaintiff] appears depressed,
> experiences difficulty opening up in regards to flashback symptoms. Experiences
> social isolation from people, struggles with driving anxiety.

*Id.*

The ALJ found Dr. Ofoegbu's opinion "generally persuasive" but noted it was "of somewhat limited value due to the fact that it was done 3.5 years after the date last insured, and the claimant's mental health may have changed during that time." Tr. 707. The ALJ explained:

> The limitations identified in the form are nonetheless consistent with the overall medical evidence prior to the date last insured and [plaintiff's] reported activities such as taking care of three children of family members, playing Pokémon Go, not engaging in therapy, and his reports that symptoms were managed with medication, which strongly suggest the reported symptoms were not as severe as alleged. The restrictions in the form appended to the report are more persuasive than those discussed in the narrative section of the report, because the degree of limitation is not quantified in the narrative account of [plaintiff's] difficulties. However, the mental status examination supports the restrictions identified in the medical source statement, and those statements as quantified therein are consistent with the degree of limitation suggested by the nature of [plaintiff's] treatment, the reported impact of treatment, and [plaintiff's] activities through the date last insured. Any greater degree of limitation suggested by the report is not persuasive because while the consultative examiner noted difficulty processing information and hallucinations, no such symptoms or signs were present through the date last insured.

Tr. 707.

As a preliminary matter, the Court notes that the ALJ's statement that Dr. Ofoegbu's opinion is "consistent with the overall medical evidence" except to the extent that it suggests a "greater degree of limitation" is not borne out by the record. *Id.* As discussed herein, plaintiff's hearing testimony and medical record, as well as the reports of Drs. Price, Paltrow, and McDuffee, all demonstrate that plaintiff suffered from depression, low motivation, flashbacks, night terrors, and overall limited functioning outside the home. Ms. Ofoegbu's examination revealed similar symptoms and associated limitations. Essentially, the ALJ rejected every piece of evidence that was favorable to plaintiff's claim of disability.

Nevertheless, as the ALJ accurately observed, plaintiff's exam with Dr. Ofoegbu was initiated more than three years after the date last insured and none of her proffered restrictions relate to the adjudication period. *See Morgan*, 2013 WL 6074119 at *10 (an ALJ need not accept

the opinion of a treating physician if the treating relationship was initiated after the relevant time period and the opinion is not offered retrospectively). In sum, the record consistently shows that plaintiff suffered from significant mental health symptoms and structured his life so as to avoid social interactions outside of his home, and nothing in Dr. Ofoegbu's post-date last insured report intimates otherwise.

## III.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly evaluate plaintiff's subjective symptom testimony and the medical opinions of Drs. Price, McDuffee, and Paltrow. Plaintiff's counsel "requests a remand [for further proceedings] with instructions so that he may amend his onset date to December 7, 2016, a day after his 2016 hearing to best address the issues that have occurred in this case pursuant to his available remedies." Pl.'s Opening Br. 35 (doc. 10). The Court agrees and finds that further proceedings would be useful in this case.

On one hand, it is undisputed that plaintiff's PTSD, anxiety, and depression are longstanding and have persisted at significant levels despite the introduction of numerous prescription medications. On the other hand, plaintiff periodically stopped his mental health medications and has not obtained counseling (even remotely), despite providers repeatedly offering such services. *See, e.g.*, Tr. 1048, 1029, 1154. And, as plaintiff's counsel denotes, Dr. Kaper's February 2016 medical report does at least tacitly support an earlier disability onset date. Tr. 300-05. Moreover, further proceedings are generally warranted, even if a case has already sustained more than one appeal, where "the ALJ will need to reassess the plaintiff's request for [an earlier] protective filing date . . . on remand." *Crystal F.*, 2025 WL 429627 at *4.

As such, this case is remanded for further proceedings. Upon remand, the ALJ must reweigh the medical and other evidence of record and, if necessary, consider an earlier alleged onset date, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 3rd day of April, 2025.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge